IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Carlyle Development, LLC,<br><br>Plaintiff,<br><br>v.<br><br>City of Camden, City of Camden Planning Commission, and Kershaw County,<br><br>Defendants. | C/A No. 3:24-cv-05697-SAL<br><br>**OPINION AND ORDER** |

Carlyle Development, LLC ("Carlyle") owns a former horse training facility located in the City of Camden (the "City") and Kershaw County (the "County"). After City and County officials rejected its plans to develop the land for residential use, Carlyle brought this lawsuit alleging federal constitutional and state law violations. [ECF No. 96.] On June 23, 2026, the court entered an order dismissing some of Carlyle's claims for failure to state a claim and declining supplemental jurisdiction over the remaining claims. [ECF No. 114.] Carlyle now moves for reconsideration of the court's order under Federal Rule of Civil Procedure 59(e). [ECF No. 116.] For the reasons below, Carlyle's motion is **DENIED**.

## I. BACKGROUND

The following facts are drawn from the allegations of the amended complaint and documents incorporated therein by reference. *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024).

### A. The Property

Approximately 20 years ago, Carlyle purchased a six-parcel tract of land located in the City of Camden and Kershaw County (the "Property"). [ECF No. 96 ¶¶ 7–9.] The bulk of the

Property—roughly 250 acres—is situated in the County; the remaining 93 acres are part of the City. *Id.* ¶ 9. The Property once operated as the Camden Training Center, a thoroughbred horse training facility. *Id.* ¶ 10. But due to changes in the equine industry, the number of horses at the Center decreased dramatically over the past two decades, and the facility is now permanently closed. *Id.* ¶¶ 10–11.

**B. Allegations Against the City**

In May 2023, Carlyle approached the City about annexing the County portion of the Property so that it could pursue a cohesive residential development. *Id.* ¶ 18. At the time, the County portion was zoned R-6 (high-density residential), which allowed residential lots as small as 6,000 square feet. *Id.* ¶ 13. The City portion, meanwhile, was zoned primarily R-15 (low-density, single-family residential), which required minimum lot sizes of 15,000 square feet. *Id.* ¶ 14. Carlyle received positive feedback from the City, and the two sides engaged in preliminary discussions about lot sizes, price points, and application procedures. *Id.* ¶ 19. Carlyle formally submitted its annexation proposal in October 2023. *Id.* ¶ 23.

Over the next several months, Carlyle continued to work with City staff and, at the City's request, agreed to reduce the number of homes and the acreage to be developed. *Id.* ¶ 25. On March 8, 2024, Carlyle submitted a revised annexation proposal along with a draft development agreement. *Id.* ¶ 26. Although City staff recommended approval, the City of Camden Planning Commission (the "City Planning Commission") voted on March 19 to deny the revised proposal. *Id.* ¶ 27. At the City's urging, Carlyle withdrew its annexation petition on April 5. *Id.* ¶ 28.

Later that month, Carlyle submitted a new sketch plan to build 193 patio homes on the City portion of the Property. *Id.* ¶ 30. The City Planning Commission was set to vote on the proposal on May 21, but days before the meeting, City staff informed Carlyle that the vote would not go

forward because of an issue with a right-of-way interest on the corner of the Property. *Id.* ¶ 31. Carlyle responded by submitting a revised plan for 187 patio homes that excluded the affected area. *Id.* ¶ 32. But City staff told Carlyle that the revised plan would not be considered at the June meeting either, because the City was amending its zoning code to eliminate the patio home conditional use in R-15. *Id.* ¶ 34. So Carlyle submitted a third sketch plan, this time for 153 single-family homes. *Id.* ¶ 35.

In July 2024, the City Planning Commission voted unanimously to deny approval of Carlyle's third plan, despite a staff recommendation of approval, finding it inconsistent with the City's Comprehensive Plan. [ECF Nos. 96 ¶ 39; 55-2 at 5.] Carlyle appealed the decision to the Kershaw County Court of Common Pleas, which affirmed in a form order. [ECF Nos. 96 ¶ 41; 74-1 at 2.]

In August 2024, the City imposed a moratorium on new subdivision developments. [ECF No. 96 ¶ 52.] Shortly before the moratorium was set to expire, in September 2025, the City rezoned a 61-acre parcel of the Property (the "Downzoned Parcel") from R-15 to R-E, raising its minimum lot size from 15,000 to 66,000 square feet. *Id.* ¶¶ 54–56. Carlyle alleges that City officials failed to consult with it before rezoning the Downzoned Parcel. *Id.* ¶ 61. It also claims that the City was motivated by a desire to force Carlyle "to sell [its] land at a far-below market value price to interested parties" or "to appropriate the [land] for public use." *Id.* ¶ 63.

**C. Allegations Against the County**

In August 2023, while Carlyle's annexation discussions with the City were underway, the Kershaw County Council (the "County Council") amended the County's zoning code to raise the minimum lot size for residential properties zoned R-6 from 6,000 to 15,000 square feet. *Id.* ¶ 21. In enacting the amendment, the County Council found that "[t]he proliferation of high-density

residential development" in the County was "generating increased traffic on roads," "consuming sewer capacity better utilized for economic development projects," "increasing the student population strain on the public school system," and "placing stress on the County's stormwater system and environmental resources." [ECF No. 98-2 at 3.] Thus, it determined, "[r]equiring larger minimum lot sizes for residential development will result in more sustainable and desirable land development" and "will further the health, safety, and well being of Kershaw County residents." *Id.*

In March 2024, a week after the City Planning Commission denied Carlyle's annexation bid, Carlyle submitted to the County a subdivision sketch plan to develop patio homes and townhomes on the County portion of the Property. [ECF No. 96 ¶ 76.] The County's Planning and Zoning Director rejected Carlyle's submission, however, citing a zoning ordinance that was enacted the day before Carlyle submitted its sketch plan. *Id.* ¶ 77. That ordinance extended the 15,000-square-foot lot size requirement to all residential uses, including patio homes and townhomes. *Id.* According to the Planning and Zoning Director, the amendment applied to Carlyle's sketch plan and made it ineligible for approval. *Id.*

In April 2024, the County Council amended its zoning code again, increasing the minimum lot size for R-6 properties to 21,780 square feet. *Id.* ¶¶ 80, 82. The County Council explained that the previous amendments had "not fully realized [its] policy goal of more sustainable and desirable land development and land usage patterns in Kershaw County." [ECF No. 98-4 at 3.] In its view, raising the minimum lot-size requirement again was "a reasonable and prudent method" to address the effects of continued population growth on the County's services and infrastructure. *Id.* at 4.

### D. Procedural History

With its development plans frustrated, Carlyle filed this lawsuit in October 2024. [ECF No. 1.] In the operative amended complaint, it asserts claims against the County, the City, and the City Planning Commission for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, inverse condemnation, unconstitutional "spot zoning," and civil conspiracy. [ECF No. 96 ¶¶ 88–130.] On June 23, 2026, the court dismissed Carlyle's due process, equal protection, and inverse condemnation claims under Federal Rule of Civil Procedure 12(b)(6) and declined to exercise supplemental jurisdiction over the remaining state law claims. [ECF No. 114.] Carlyle now moves for reconsideration of the court's order under Rule 59(e). [ECF No. 116.] Defendants oppose Carlyle's motion. [ECF Nos. 117, 118.] Carlyle did not file a reply, and the time to do so has passed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to move to "alter or amend a judgment" within 28 days of its entry. Fed. R. Civ. P. 59(e). "A district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal quotation marks omitted). Altering or amending a judgment "is an extraordinary remedy that should be applied sparingly." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). "[M]ere disagreement [with the court's decision] does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Nor may parties use the rule to "relitigate old matters" or "raise arguments or present evidence that could have been raised

prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted).

## III. DISCUSSION

At the outset, the court observes that, in moving for reconsideration, Carlyle largely rehashes arguments previously made and raises new ones that could have been presented in opposition to Defendants' motions to dismiss. That alone is sufficient grounds for denying its motion. *See, e.g.*, *Hanover Ins. Co. v. Corrpro Cos.*, 221 F.R.D. 458, 460 (E.D. Va. 2004) ("Rule 59(e) does not entitle [a party] to a second bite at the apple."); *United States ex rel. Day v. Boeing*, 796 F. Supp. 3d 243, 248 (E.D. Va. 2025) ("[I]t is improper to use a Rule 59(e) motion to ask the court to rethink what the court has already thought through—rightly or wrongly." (internal quotation marks omitted)). Nevertheless, the court will address the merits of Carlyle's arguments below.

### A. Inverse Condemnation

Carlyle first argues that the court committed clear error by finding that it had failed to plead a regulatory taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).[1] [ECF No. 116 at 1–2.] A *Lucas* taking occurs when a challenged regulation "completely deprive[s] an owner of '*all* economically beneficial us[e]' of [its] property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (emphasis in original) (quoting *Lucas*, 505 U.S. at 1019). Applying that standard, the court determined that Carlyle had failed to state a *Lucas* claim because Carlyle acknowledged that the Property could still be sold, albeit "for a fraction of its market value," and thus "retain[ed] economic value." [ECF No. 114 at 10.] Carlyle asserts that was error because the

---

[1] "Under South Carolina law federal takings law is incorporated as an element of an inverse condemnation action." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 329 (4th Cir. 2005).

court "conflated residual value with economically beneficial use" and incorrectly focused on whether "the land could fetch some price in a distressed or forced sale." [ECF No. 116 at 1–2.]

To be sure, as Carlyle points out, "the ability to sell a property does not always constitute an economically beneficial use." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 671 n.3 (3d Cir. 2022); *accord DM Arbor Court, Ltd. v. City of Houston*, 150 F.4th 418, 425 (5th Cir. 2025). For example, in *Lost Tree Village Corp. v. United States*, 787 F.3d 1111 (Fed. Cir. 2015), the Federal Circuit found a *Lucas* taking where a permit denial left the property with no residual value apart from its "environment value as wetland." *Lost Tree*, 787 F.3d at 1116; *see also id.* at 1117 ("[W]e disagree that all sales qualify as economic uses. When there are no underlying economic uses, it is unreasonable to define land *use* as including the sale of the land."). But here, the Property has not been "depriv[ed] of all economic value"—it can still be developed for residential use under existing City and County regulations. *Palazzolo v. Rhode Island*, 533 U.S. 606, 632 (2001). Although Carlyle wishes to build at densities higher than currently allowed, the fact that the Property remains developable to some degree dooms its claim under *Lucas*. *See id.* at 631 ("A regulation permitting a landowner to build a substantial residence on an 18–acre parcel does not leave the property 'economically idle.'" (quoting *Lucas*, 505 U.S. at 1019)); *Quinn v. Bd. of Cnty. Comm'rs*, 862 F.3d 433, 442 (4th Cir. 2017) (finding no *Lucas* taking where the plaintiff's "lots [were] still developable, albeit less densely than [the plaintiff] had hoped").

Carlyle also takes issue with the court's application of the *Penn Central* framework. [ECF No. 116 at 2–4.] Under *Penn Central*, "[w]here a regulation places limitations on land that fall short of eliminating all economically beneficial use," courts consider "a complex of factors" to determine whether "a taking nonetheless may have occurred." *Palazzolo*, 533 U.S. at 617. Those factors include (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to

which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U. S. 104, 124 (1978). Carlyle asserts that the court clearly erred by weighing these factors at the motion-to-dismiss stage. In its view, given that the *Penn Central* test is inherently fact intensive, its claim must proceed to discovery. The court disagrees.

While the Supreme Court described the *Penn Central* framework as an "ad hoc, factual inquir[y]," *id.*, regulatory takings claims are still subject to the pleading requirements of *Twombly* and *Iqbal*. Thus, even when *Penn Central* is involved, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Carlyle's complaint falls short of that standard. Carlyle did not allege sufficient facts to establish the basis for any alleged diminution in value.[2] Nor did it adequately allege how Defendants' actions interfered with its reasonable investment-backed expectations for the Property.[3] And as for the third *Penn Central* factor, although the complaint characterizes Defendants' conduct as "discriminatory and exploitative," ECF No. 96 ¶ 103, the Fourth Circuit has repeatedly recognized that "'[m]anaging the density of development—even if it disappoints a particular developer—is . . . a crucial goal of land use planning' and generally does not amount to a taking." *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 696 (4th Cir. 2018) (quoting

[2] The complaint merely alleges, in conclusory fashion, that development of the County portion of the Property is now "impossible" and that it is not "economically feasible" to develop the City portion. [ECF No. 96 ¶¶ 62, 83.]

[3] The complaint says only that the "option to develop the Property into residential housing" was "an integral part" of Carlyle's decision to buy the Property some twenty years ago. [ECF No. 96 ¶ 12.] But, as the court explained in its previous order, Carlyle could have no reasonable expectation that the Property's "zoning designation would remain unchanged in perpetuity." *Clayland Farm Enters., LLC v. Talbot Cnty.*, 987 F.3d 346, 355 (4th Cir. 2021); *see also Dunes W. Golf Club, LLC v. Town of Mt. Pleasant*, 737 S.E.2d 601, 609 (S.C. 2013) ("[T]he zoning classification of one's land is not a cognizable property right.").

*Quinn*, 862 F.3d at 441); *see also Quinn*, 862 F.3d at 443 (observing that "[r]egulations that control development based on density and other traditional zoning concerns are the paradigm of [the] type of public program" that "adjust[s] the benefits and burdens of economic life to promote the common good" (internal quotation marks omitted)); *Scratch Golf, LLC v. Beaufort Cnty.*, No. 21-2284, 2024 WL 575370, at *2 (4th Cir. Feb. 13, 2024) (same).

Ultimately, when the three factors are considered together, the complaint's allegations do not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, the court did not err in resolving the *Penn Central* inquiry against Carlyle at this stage of the litigation.[4] *See Blackburn v. Dare Cnty.*, 58 F.4th 807, 812–815 (4th Cir. 2023) (affirming Rule 12(b)(6) dismissal of a *Penn Central* claim); *Scratch Golf*, 2024 WL 575370, at *2 (same); *see also Pulte Home Corp.*, 909 F.3d at 695–97 (affirming Rule 12(c) dismissal of a *Penn Central* claim).

**B. Equal Protection**

Carlyle next argues that the court clearly erred in dismissing its equal protection claim against the City for failing to plausibly allege the existence of a similarly situated comparator. [ECF No. 116 at 4–5.] Again, the court disagrees.

---

[4] In moving for reconsideration, Carlyle has submitted an expert appraisal report that it says "substantiate[s]" its allegations regarding the economic impact factor. [ECF No. 116 at 3.] But the court cannot consider an expert report when ruling on a motion to dismiss. *See Just Puppies, Inc.*, 123 F.4th at 660 (stating that a court may consider only "documents incorporated into the complaint by reference," "matters of which a court may take judicial notice," and "documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (internal quotation marks omitted)). And even if the court could consider the appraisal report, its conclusions do not help Carlyle. The report opines that the value of the County portion of the Property has decreased by 76.5%, while the value of the City portion has dropped by 79%. [ECF No. 116-1 at 6.] Those figures, however, are insufficient to demonstrate a regulatory taking under Fourth Circuit and Supreme Court precedent. *See Pulte Home Corp.*, 909 F.3d at 696 (holding that an assumed 83% diminution did not establish a taking); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (no taking despite a 92.5% diminution in value).

In opposing the City's motion to dismiss, Carlyle incorrectly suggested that a plaintiff asserting an equal protection claim under a class-of-one theory need not identify a comparator. [ECF No. 105 at 10.] Perhaps recognizing this error, Carlyle now contends that the complaint *did* identify suitable comparators, which the court overlooked. [ECF No. 116 at 4–5.] Specifically, Carlyle points to its allegation that the City downzoned a 61-acre parcel of the Property to R-E while neighboring properties remained in more permissive, higher density classifications. [ECF No. 96 ¶¶ 55–59.]

Setting aside that this argument was not raised before, it is unpersuasive. To plead a class-of-one claim, a plaintiff must allege facts "show[ing] an extremely high degree of similarity between [itself] and the persons to whom [it] compare[s] [itself]." *SAS Assocs. 1, LLC v. City Council for City of Chesapeake*, 91 F.4th 715, 722 (4th Cir. 2024) (internal quotation marks omitted). Carlyle, however, fails to explain how the Downzoned Parcel is similar to the neighboring properties in any respect other than mere proximity. That failure is fatal to its claim. *See id.* at 723 ("A class-of-one claim requires a showing that highly similar comparators received better treatment. Under *Twombly* and *Iqbal*, it is not enough to simply allege such similarity; the similarity must be plausible."). Consequently, Carlyle's belated comparator argument does not present a basis for reconsideration.

**C. Due Process**

Carlyle finally challenges the court's dismissal of its procedural and substantive due process claims. [ECF No. 116 at 5.] The court dismissed those claims because Carlyle had failed to plausibly allege a "legitimate claim of entitlement" to approval of its sketch plans. [ECF No. 114 at 3–7.] According to Carlyle, reconsideration is warranted because the court failed to consider

whether it had been deprived of a property interest "in the ownership and lawful use of its land" through Defendants' "cumulative regime of conduct." [ECF No. 116 at 5.]

This argument is unavailing. No matter how Carlyle attempts to frame its due process claims, it still must show a legitimate claim of entitlement grounded in state law. *Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992); *see also Pulte Home Corp.*, 909 F.3d at 692 ("One has a constitutionally protected property interest *only if* it has a 'legitimate claim of entitlement,' rather than a mere 'abstract need or desire' or 'unilateral expectation.'" (emphasis added) (quoting *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005))). In the context of land-use decisions, whether a person "possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." *Gardner*, 969 F.2d at 68 (emphasis in original). "If the local agency retains significant discretion to refuse approval, then the plaintiff has no legitimate claim of entitlement and therefore no cognizable property interest." *Scratch Golf*, 2024 WL 575370, at *1.

Here, both the City's and the County's land-use regulations vest officials with discretion to deny approval of subdivision applications. *See* Camden, S.C. Code of Ordinances § 156.025(C)(5) (providing that the City Planning Commission may "approve, approve conditionally, or disapprove" a preliminary plat); Kershaw Cnty., S.C. Unified Code of Zoning & Land Dev. Regs. § 5:2.4-2(C)(4) (providing that the Planning and Zoning Commission may "approve, approve conditionally, or disapprove" a sketch plan). For this reason, Carlyle cannot show that it had a constitutionally protected property interest in having its development plans approved. And without a protected property interest, it cannot establish a procedural or substantive due process violation.

*See Pulte Home Corp.*, 909 F.3d at 691–92. Thus, the court properly dismissed Carlyle's due process claims for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, Carlyle's motion for reconsideration, ECF No. 116, is **DENIED**.

**IT IS SO ORDERED.**

November 10, 2026
Columbia, South Carolina

Sherri A. Lydon
United States District Judge